Carolyn S. MacKENZIE, Plaintiff
and Respondent,

v.

The MUTUAL BENEFIT LIFE INSUR-
ANCE COMPANY, Defendant
and Appellant.

No. 13636.

Supreme Court of Utah.

Oct. 30, 1974.

Richard W. Campbell, Olmstead, Stine & Campbell, Ogden, for defendant and appellant.

Keith E. Murray, Odgen, for plaintiff and respondent.

TUCKETT, Justice:

In these proceedings the plaintiff seeks to recover the death benefits provided for in a double indemnity provision of the life insurance policy on her husband, Thomas W. MacKenzie. The court below entered judgment in favor of the plaintiff and the defendant appeals.

The particular provisions of the policy we are here concerned with are as follows:

ADDITIONAL DEATH BENEFIT. This provision is a part of this policy and is issued in consideration of the payment of the premium payable. . . . It provides, subject to the terms of this provision, insurance payable at the death of the insured as part of the proceeds of this policy upon receipt of due proof that the death of the insured resulted directly, and independently of all other causes, from accidental bodily injuries . . ..

*Risks Not Assumed.* The insurance under this provision will not be payable

(a) if death is caused or contributed to by one or more of

(1) suicide, or any attempt at suicide, while sane or insane;

(2) intentional self-inflicted injury of any kind, while sane or insane.

The insured, Thomas W. MacKenzie, was employed by Merrill Lynch, Pierce, Fenner & Smith, Inc., and in early 1971 he went from his home in Ogden, Utah to New York City to attend a training school for employees of the brokerage firm. On April 1, 1971, Thomas W. MacKenzie suffered fatal injuries when he fell from a window of the hotel in New York City where he and other trainees were housed. Prior to April 1, MacKenzie and one William Reilly occupied a suite of rooms on the fifth floor of the hotel where each had a separate bedroom and shared a sitting room. Mr. Reilly in his deposition testified that during the evening prior to the incident he and other students had gone to dinner together and had attended a movie, and upon his return to the hotel about 11:30 p. m., MacKenzie was already back in the rooms. Reilly went to bed leaving

MacKenzie in the sitting room reading letters. In the early morning hours Reilly was awakened by running water and the sounds from the radio and television set. Reilly inquired of MacKenzie whether or not anything was wrong and was informed that everything was all right. A second similar episode occurred during the night. At about 7:00 a. m. MacKenzie entered Reilly's bedroom and scuffled with Reilly telling Reilly to wake up. Bizarre conduct on the part of MacKenzie occurred such as his crawling on the floor and talking about Lt. Calley in Viet Nam. Reilly became frightened and ran to the floor above and awakened other students. While in the room above he heard the sounds of things being broken in the room below and also the sound of breaking glass. One of the persons in the room opened a window and the body of MacKenzie was observed on the sidewalk below. Reilly returned to the suite which he and MacKenzie had occupied and found it in shambles. Physical evidence indicated that MacKenzie had apparently partially gone through the drapes and through the venetian blinds and the window. The window in question, was at the end of the sitting room and was about three feet above the floor. Below the window there was a heating appliance against the wall.

The trial court found that MacKenzie was mentally deranged at and prior to his fall from the window. The court also found that the deceased was not bent on self-destruction in going through the window. The court concluded that MacKenzie did not commit suicide.

It is the defendant's contention that the only conclusion the evidence will support is that MacKenzie leaped through the blinds and the windows and that he intentionally rather than accidentally fell to his death.

No one was present to witness what went on in the room immediately prior to MacKenzie's fall nor to MacKenzie's activities immediately prior thereto. It is clearly indicated that the death of MacKenzie resulted from the injuries he suffered from the fall from the window to the pavement. The burden was on the defendant to show that MacKenzie committed suicide and benefits for his accidental death were excluded by the terms of the policy.[1] That burden has not been sustained by the defendant.

The decision of the trial court is affirmed. Respondent is entitled to costs.

CALLISTER, C. J., and HENRIOD, ELLETT and CROCKETT, JJ., concur.

1. Browning v. Equitable Life Assur. Soc., 94 Utah 570, 80 P.2d 348; Griffin v. Prudential Ins. Co. of America, 102 Utah 563, 133 P.2d 333.